The Dwelling House Insurance Company

*v.*

H. E. Dowdall.

*Filed at Springfield June 13, 1895—Rehearing denied January 17, 1896.*

1. Insurance—*proof of loss—when necessary.* To entitle a party insured to recover for a loss by fire, proof of the loss as required by the policy, both as to substance and time, is necessary, or a legal excuse must be shown.

2. Same—*effect of stipulation in policy that conditions shall not be waived.* A clause in a policy of insurance that no officer, agent or other representative of the company shall have power to waive any provision or condition in the policy, may itself be waived by the company, through its agent.

3. Same—*agreement that proofs of loss shall not be waived—effect.* If the parties agree, by their policy, that there shall be no waiver of proof of loss, they may subsequently change that agreement.

4. Same—*proof of waiver of condition.* It is not necessary, in an action on an insurance policy, to prove an express agreement to waive a condition in the policy, but it may be inferred from the acts and conduct of the insurer inconsistent with an intention to insist upon the strict performance of the condition.

5. Same—*waiver, in part, of proofs of loss.* Where a policy requires a sworn statement, not merely as to the extent of the loss, but also as to the origin and circumstances of the fire, etc., if the company sends its agent to ascertain one fact, viz., the extent of the loss, and he does so, reducing the same to writing, this alone will not waive the sworn statement as to other matters.

6. Waiver—*when waiver is a question of law.* While a question of waiver is usually one of fact and for the jury, yet if there is no conflict in the evidence on that subject it becomes a matter of law, to be determined by the court.

7. Estoppel—*to insist on performance of condition.* Waiver of the condition of a policy by an insurance company outside of a special agreement may be inferred from such a course of conduct on the part of the company as is calculated to lead the assured to believe that the company did not require its performance.

*Dwelling House Ins. Co.* v. *Dowdall,* 55 Ill. App. 622, affirmed.

Appeal from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Greene county; the Hon. George W. Herdman, Judge, presiding.

HARBART & DALEY, and HENRY T. RAINEY, for appellant:

An insurance company may waive any defense it has, but it has the right to satisfy itself as to the facts and circumstances of the loss before making such waiver, and by investigating the facts the company will not waive its grounds of defense. When a policy of insurance contains such provision, the conditions can only be waived in the manner therein prescribed. *Insurance Co.* v. *Schimp,* 6 Ill. App. 248; *Insurance Co.* v. *Ruckman,* 127 Ill. 365; *Cleaver* v. *Insurance Co.* 65 Mich. 527; *Hankins* v. *Insurance Co.* 70 Wis. 1; *Mitchell* v. *Insurance Co.* 51 Pa. St. 402; *Insurance Co.* v. *Holzgrafe,* 53 Ill. 516; *Miserau* v. *Insurance Co.* 66 N. Y. 274; May on Insurance, p. 777, sec. 511; 2 Wood on Insurance, p. 570, sec. 420; *Catori* v. *Insurance Co.* 33 N. J. 280.

The acts of Smith, the special agent, are the only facts upon which an estoppel is predicated. To prove the estoppel it was necessary to prove the agency. 1 Am. & Eng. Ency. of Law, 351; *Maxey* v. *Heckethorn,* 44 Ill. 437.

MARK MEYERSTEIN, for appellee:

The acts and conduct of the appellant and its agent, Smith, amount, in law, to a waiver of the proofs of loss. *Home Ins. Co.* v. *Myer,* 93 Ill. 271; *Grange Mill Co.* v. *Western Ass. Co.* 118 id. 396; *Insurance Co.* v. *Cary,* 83 id. 543.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This in an appeal from a judgment of the Appellate Court for the Third District, affirming that of the circuit court of Greene county, in favor of appellee, against appellant, on a policy of fire insurance. (55 Ill. App. 622.) The property insured was a farm barn. It was insured for $1500, from November 22, 1888, to November 22, 1893. It burned October 8, 1890. The policy required the insured to give the company immediate notice of loss or damage to the property, and within thirty days render a statement, signed and sworn to by the insured, stating

the knowledge of the insured as to the time, origin and circumstances of the loss; the interest of the insured and others in the property; its cash value, and the amount of loss thereon; incumbrances, title, ground on which situate, etc., to which should be annexed a certificate of the magistrate or notary public living nearest to the place of the loss, stating that he has examined the circumstances and believes the insured has honestly sustained loss to the amount that he shall certify. It also provided that "no suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the insured shall have fully complied with all the foregoing requirements." It concluded with this clause: "This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions, if any, as properly are or shall be endorsed hereon or added hereto; and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto, and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

On the 9th of October, 1890,—the day after the fire,—the insured, through one Powell, notified the company's general agent at Chicago of the loss, and requested him to send an adjuster at once. He replied on the 24th of the same month, saying: "As soon as possible our special agent, Mr. Ira Smith, will visit the scene of the fire for the purpose of ascertaining the extent of the damage, but for no other purpose, neither he nor any local agent of the company having any authority to waive or extend

any of the conditions of the policy." On the trial plaintiff testified: "This Mr. Ira Smith, in accordance with this letter, came to see me, I am pretty sure, within thirty days after the fire. He represented himself to be the adjuster, and had come to settle the loss. For the purpose of ascertaining the loss he looked at the ruins, and called on me and my son to give him a proof of loss, and copied it down what we said. My son could remember exactly. The hay, corn and oats was all burned. Mr. Smith copied it all down and called on Mr. Furgeson, who had brought him out, to know if the price we had given him was the correct price of hay, corn and oats. Mr. Furgeson was at that time a livery stable man here in Carrollton. After he had taken that all down he offered me $400 for a compromise, and I told him if he did not owe me the face of the policy he did not owe me anything. I did not get any more word from the company, and I employed you,"—meaning her counsel. On cross-examination she was asked, "Did you at that time make any statement to the company and sign it," etc., and she answered, "He asked us to give him proof of loss and he copied it down." And on re-direct examination she stated, "He called on me to give him proof of loss." Her attorney wrote the general agent December 20, urging the payment of the loss. Two days later he answered, denying the company's liability for several reasons, among which was the failure to furnish proof of loss. On January 3, 1891, formal proofs were made, sworn to by the son of the insured, and forwarded by her attorney, who at the same time again wrote the general agent, stating that while satisfied the company had "received a former proof of loss," yet to enable the agent to more fully comprehend the situation he transmitted the sworn statement; that he trusted he would be convinced of the justice of the claim, and the matter might be speedily and amicably settled. That letter was answered on the 12th of the same month, declining to accept the proofs of loss because not furnished within the

time stipulated in the policy, and refusing to pay the loss. Thereupon this suit was brought. The parties stipulated on the trial that all proper matters of defense might be made under the general issue.

It was insisted on behalf of the defendant that plaintiff could not recover because she had failed to comply with the requirement of the policy in furnishing proof of loss within thirty days after the fire. Plaintiff met this defense with the claim that such proof was waived by the conduct of the company, through its agent, Smith, and the court, at her request, instructed the jury as follows:

5. "The court also instructs you, that if the evidence shows that before the 8th day of November, 1890, the defendant sent to the plaintiff its special agent, Ira Smith, for the purpose of ascertaining the extent of the plaintiff's loss, and that such special agent did go to plaintiff and ascertained from her the extent of her loss, and that he also then and there reduced the same to writing, and then and there also offered to the plaintiff the sum of $400 in settlement of her loss, then the plaintiff cannot be defeated in this case if she did not furnish proofs of loss within the time prescribed by the policy in evidence.

6. * * * "If the jury further believe, from the evidence, that the said barn and contents was so destroyed by fire on the 8th day of October, 1890, and that the plaintiff, through one John G. F. Powell, on the 9th day of October, 1890, notified the defendant of said destruction of said barn and contents by fire, and that the defendant, on the 24th day of October, in reply, by letter informed the plaintiff that it would send its special agent to ascertain the extent of plaintiff's loss by said fire, and if the evidence also shows that thereafter such special agent of the defendant did come to plaintiff's premises and did so ascertain from the plaintiff and from his own inspections the extent of said loss by fire, if any, and that he then and there reduced the same to writing, then the plaintiff was not bound to furnish any other proofs of

loss, notwithstanding the provisions of the policy to the contrary."

The only error of law insisted upon in this court is the giving of these instructions.

The position of counsel that under the clause in the policy which says, "no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy," the company could not be held to have waived the required sworn statement of loss by any acts or declarations of its agent, Smith, is not maintainable.    Such a statement was required for the sole benefit of the company, and it could certainly waive it or extend the time within which it should be furnished, if it saw proper to do so, notwithstanding the statement in the policy that it would not.    That is to say, even if the parties did agree by the policy that there should be no such waiver, they might subsequently change that agreement.    Nor is it necessary in such case to prove an express agreement to waive, "but it may be inferred from the acts and conduct of the insurer inconsistent with an intention to insist upon the strict performance of the condition."    (*Parker* v. *Amazon Ins. Co.* 51 Md. 512, and authorities there cited.)    It was also held in that case that a clause in a policy providing that "no waiver or modification of any of the terms or conditions of this policy shall be made in any event," referred to those conditions and provisions which entered into and formed part of the contract of insurance, and which were essential to make it a binding contract between the parties, properly designated conditions, but had "no reference to those stipulations which are to be performed after a loss has accrued, such as giving notice and furnishing proofs of loss,"— citing *Blake* v. *Ex. Mutual Ins. Co.* 12 Gray, 265; *Franklin Fire Ins. Co.* v. *Chicago Ice Co.* 36 Md. 102.

That the above instructions do not correctly state the law must be conceded.    They each state, as a matter of law, that if the company sent its special agent to ascer-

tain the extent of plaintiff's loss, and he did so through the plaintiff and by his own inspection, and reduced the information to writing, proof of loss was thereby absolutely waived—rendered unnecessary.   That is, notwithstanding the policy made it the duty of the insured to furnish the company a sworn statement, not merely as to *the extent of the loss,* but also as to the origin and circumstances of the fire, etc., together with a certificate of a magistrate or notary public, yet if the company sent its agent to ascertain one fact, viz., the extent of the loss, and he did so, reducing the same to writing, this alone would amount to a waiver of the sworn statement as to all other facts.   The rule is:  "Proofs of loss should be made as required by the policy, both as to substance and time, or a legal excuse shown therefor."   (Wood on Fire Insurance, p. 693, sec. 413.)   The doctrine of waiver, as applied to a case like this, is, in effect, that of an estoppel *in pais,* and the instructions should have left the jury to determine, from all the facts proved, whether the plaintiff was led to believe, by the conduct of the company, that formal proofs of loss would not be required of her.   This the fifth instruction, given at the request of the defendant, did, in the following language:

"The jury are instructed that mere silence in regard to the furnishing of such proofs of loss is not to be taken as a waiver of the rights of the company to insist on a strict compliance with the terms of the contract.   In order to amount to a waiver you must find, from the evidence, that there was either an express agreement between the parties to that effect, or else that there was such a course of conduct on the part of the defendant as was reasonably calculated to lead the assured to believe that the company did not require such proofs of loss."

This instruction correctly lays down the law of the case.   It properly leaves the question of waiver to the jury under all the facts.   It follows the fifth and sixth, given at plaintiff's request, should have been denied.

The more difficult question in the case is, should this error work a reversal of the judgment below? We are inclined to the opinion that, under all the evidence in the case, it should not. While the question of waiver is usually one of fact and for the jury, still, if there is no conflict in the evidence on that subject it becomes a matter of law, to be determined by the court. The testimony of the plaintiff as to what took place between herself and the company's agent, Smith, is wholly uncontradicted. She says he called upon her for proofs of loss, and took down, in writing, what she and her son told him. True, she did not furnish him proofs within the requirement of the policy; but if the agent called for "*proofs of loss,*" and without objection accepted what was given him in response to that request, the insured surely had a right to assume no other proofs would be required. Upon being notified that the company did not so understand the matter, she furnished the formal statement required by the terms of the policy, to which no objection was made except that it was not furnished in time. Importance should also be attached to the fact that the agent offered to pay a part of the loss. That fact was well calculated to lead the insured to suppose that the loss was admitted, the only dispute being as to the amount she was entitled to receive.

We do not regard the notification in the general agent's letter that Smith had no authority to waive or extend any condition of the policy of substantial importance in this view of the case. What has been said as to the power of an agent to waive proofs of loss notwithstanding a clause in the policy to the contrary, applies here. If there was a conflict in the evidence as to what the agent did and said at the time of his interview with the plaintiff, notice to her of his limited powers would have become important, as tending to show that under all the facts she was not misled as to the request that proofs of loss should be

made within thirty days. But no such case is presented by this record. We entertain no doubt that he had the power to bind the company by any act or declaration which would operate against it as an estoppel *in pais*.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*